**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **THI XUAN THAO DANG** | **CIVIL ACTION NO. 3:26-CV-03297 SEC P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LISA BOWEN ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) filed by pro se Petitioner Thi Xuan Thao Dang ("Dang"), an immigration detainee at Richwood Correctional Center. Dang seeks release from detention.

For the following reasons, the Petition (Doc. 1) should be GRANTED.

## I. Background

Dang is a pregnant thirty-two-year-old native and citizen of Vietnam who entered the United States without inspection on January 8, 2024. Doc. 1 at 6; Doc. 5-1 at 1. On January 10, 2024, U.S. Border Patrol processed Dang, issued her a Notice to Appear charging her as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and released her on her own recognizance with instructions to report to ICE. *Id.* Dang subsequently applied for asylum and proceeded on the non-detained immigration docket. ECF No. 1 at 2.

On May 6, 2025, Dang was enrolled in ICE's Alternatives to Detention ("ATD") program. ECF No. 5-1 at 1. According to the Government, Dang thereafter failed to complete a required biometric check-in on September 8, 2025, and ICE learned that she had moved to Louisiana without prior authorization from ATD officers. *Id.* Dang completed a biometric check-in on November 12, 2025, but failed to complete another scheduled biometric check-in on January 13, 2026. *Id.* at 1-2.

On April 8, 2026, an Immigration Judge denied Dang's applications for relief and ordered her removed to Vietnam. Doc. 1 at 6; Doc. 5-1 at 2. Dang timely appealed that decision to the Board of Immigration Appeals ("BIA"), and her appeal remains pending. *Id.* Thus, Dang is not subject to a final order of removal.

On April 21, 2026, Dang contacted ATD and advised that she was living in Louisiana and could not attend an in-person office visit scheduled for the following day. Doc. 5-1 at 2. According to the Government, Dang was instructed to report instead to the appropriate ICE office in Louisiana, but she failed to do so. *Id.* The Government further maintains that Dang failed to complete a scheduled biometric check-in on May 26, 2026, and failed to contact ATD officers as required by May 29, 2026. *Id.* On May 29, 2026, ATD notified Enforcement and Removal Operations ("ERO") that Dang had absconded and terminated her participation in the ATD program. *Id.* Dang disputes the Government's characterization of this

history as demonstrating that she absconded, noting that she personally advised ATD of her Louisiana residence and subsequently appeared before ICE. Doc. 6 at 5.

Dang was detained on July 22, 2026, when she appeared for a routine check-in. She has no criminal history. Doc. 1 at 6; Doc. 6 at 6. The record likewise contains no allegation that Dang poses a danger to the community or a national-security threat.

Dang reports that her pregnancy is considered high-risk due to prior miscarriages. Doc. 1 at 6-7; Doc. 1-5. She contends that her continued detention is inconsistent with ICE Directive 11032.4, which generally provides that ICE should not detain individuals known to be pregnant unless release is prohibited by law or exceptional circumstances exist. Doc. 1 at 7; Doc. 1-6. Dang further contends that ICE has not conducted the pregnancy-specific custody review required by the Directive. Doc. 6 at 2-4.

The Government maintains that Dang's detention is authorized by 8 U.S.C. § 1225(b)(2)(A) and that her history of noncompliance with ATD constitutes an individualized and exceptional circumstance supporting her continued detention. Doc. 5 at 1-2, 5-6. In support, the Government relies primarily upon the declaration of Supervisory Detention and Deportation Officer Ronnie Downey, which recounts Dang's immigration and ATD history through her July 22, 2026 detention. Doc. 5-1. The declaration does not address Dang's pregnancy or identify any review of her

continued detention pursuant to Directive 11032.4. *See generally id.* The Government alternatively argues that, even if additional procedures were required under the Directive, any violation would warrant an order requiring ICE to comply with those procedures rather than Dang's immediate release. Doc. 5 at 6-7.

## II. Law and Analysis

### A. Dang's detention is authorized by statute.

In *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), the Fifth Circuit held that a noncitizen who entered the United States without inspection and has never been admitted or paroled remains an "applicant for admission" subject to detention under § 1225(b)(2)(A). Accordingly, notwithstanding Dang's prior release on her own recognizance, she is not statutorily entitled to a bond hearing under § 1226(a). That conclusion, however, does not resolve her claim that ICE failed to comply with Directive 11032.4 in detaining her while pregnant. *See Gomez Godinez v. Perez*, 2026 WL 2602344, at *3–5 (S.D. Tex. Aug. 21, 2026).

### B. ICE Directive 11032.4 is applicable.

ICE Directive 11032.4 provides that ICE generally should not detain individuals known to be pregnant "unless release is prohibited by law or exceptional circumstances exist." *Shigwedha v. Acuna*, 2026 WL 2211525, at *1 (W.D. La. July 31, 2026) (Van Hook, A.). Exceptional circumstances exist where "(1) the individual poses national security concerns; or (2) the individual poses an imminent

risk of death, violence, or physical harm to any individual." *Id.* When such an individual is detained, ICE must monitor her health and well-being and conduct regular custody and medical reevaluations, with continued detention evaluated at least weekly.

Under the *Accardi* doctrine, agencies must comply with their own regulations and internal procedures. *Id.* (citing *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007)). Accordingly, federal courts may set aside agency action when an agency fails to comply with its own directives. *Id.*

In *de Leon v. Ladwig*, 2026 WL 19095 (W.D. La. Jan. 2, 2026) (Joseph, D.), the Court found the pregnant petitioner lawfully detained under § 1225(b)(2), but it rejected the Government's argument that her release was therefore "prohibited by law." Judge Joseph explained that 8 C.F.R. §§ 235.3(c)(1) and 212.5(b) permit parole of individuals detained under § 1225(b), including women medically certified as pregnant. Finding that the Government had not demonstrated how the petitioner's continued detention comported with the Directive and *Accardi*, the Court ordered the Government to show cause why release was impermissible or what exceptional circumstances justified her continued detention. *Id.* at *8. The Government thereafter released de Leon on parole before the show-cause hearing took place. *See de Leon* at Doc. 18.

More recently, in *Shigwedha*, Judge Van Hook found that ICE violated the *Accardi* doctrine and Directive 11032.4 where the Government offered no evidence that ICE reviewed its decision to detain a pregnant woman, much less conducted the required regular reviews, and produced nothing showing that she was a national-security threat or danger to others. *Shigwedha*, 2026 WL 2211525, at *2. The Court ordered her release.

The same deficiencies are present here. The Government relies on Dang's alleged noncompliance with the ATD program, including missed biometric check-ins and ATD's determination that she had absconded. Notably, however, Dang was ultimately taken into custody when she reported to ICE as instructed. Doc. 1 at 6. While Dang's prior ATD history may bear on appropriate conditions of release, it does not establish either exceptional circumstance identified in Directive 11032.4. The Government does not contend that Dang poses a "national security concern[]" or an "imminent risk of death, violence, or physical harm" to another person. *Shigwedha*, 2026 WL 2211525, at *1.

Nor has the Government shown that ICE complied with the Directive. The Downey declaration recounts Dang's ATD history, but it does not mention her pregnancy, identify any review conducted pursuant to Directive 11032.4, or establish that ICE conducted the required regular custody and medical reevaluations. Doc. 5-1. As in *Shigwedha*, the Government has offered no evidence that "ICE

reviewed its decision to detain [Petitioner], a pregnant woman, much less that ICE conducted 'regular' reviews of the decision." *Shigwedha*, at *2.

The Southern District of Texas recently reached the same result in *Gomez Godinez v. Perez*, 2026 WL 2602344 (S.D. Tex. Aug. 21, 2026). There, the court relied on *Shigwedha* and found an *Accardi* violation where the record contained no evidence that ICE conducted the weekly custody reevaluations required by Directive 11032.4. The court ordered the petitioner released under reasonable conditions.

Accordingly, as in *Shigwedha*, ICE has failed to demonstrate compliance with Directive 11032.4, and Dang should be released. Because relief is warranted on this ground, the Court need not reach Dang's broader constitutional challenge to her detention.

## III. Conclusion

Because the Government has failed to establish that Dang's continued detention falls within an exception recognized by ICE Directive 11032.4, or that ICE conducted the custody and medical reviews required by the Directive, IT IS RECOMMENDED that the Petition be GRANTED and that Dang be RELEASED under appropriate conditions.

Under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P.

6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Signed at Lafayette, Louisiana on this 28th day of September, 2026.



CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE